U.S. DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| JULIE BEBERMAN, | )<br>) |
| Plaintiff, | ) CIVIL. NO.<br>) |
| v. | )<br>) |
| SECRETARY OF STATE ANTONY BLINKEN,<br>IN HIS OFFICIAL CAPACITY, | ) ACTION FOR TEMPORARY, PRELIMINARY,<br>) AND PERMANENT INJUNCTIVE RELIEF<br>) AND DECLARATORY RELIEF |
| Defendant. | )<br>) |

**COMPLAINT**

COMES NOW Plaintiff Julie Beberman, *pro se*, and for her Complaint against Secretary of State Antony Blinken, in his official capacity, alleges as follows:

**I.    The Parties**

1. Plaintiff Julie Beberman is an involuntarily retired Foreign Service Officer of the U.S. Department of State.

2. Defendant Antony Blinken is the Secretary of State and is sued in his official capacity.

**II.    Jurisdiction**

3. This Court has jurisdiction under 5 U.S.C. § 703 and 5 U.S.C. § 704 of the Administrative Procedure Act (APA), 28 U.S.C. § 1331, and the Foreign Service Act of 1980, 22 U.S.C. § 3901 *et seq.*

4. Secretary of State Antony Blinken, through his delegated authority, has issued a final order and will shortly be taking final actions based on that final order.

5. Because Ms. Beberman is a former member of the Foreign Service, she is barred from bringing the matters alleged in this Complaint through the grievance procedures included in the Foreign Service Act of 1980, 22 U.S.C. §§ 4131-4140.

6. There is no other avenue for relief, except through the APA.

7. No further administrative exhaustion is required.

### III.   Venue

8. This Court has venue pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1)(C).

9. Plaintiff Julie Beberman resides in St. Croix, U.S. Virgin Islands.

10. Defendant Blinken is an officer of an agency of the United States acting in his official capacity.

### IV.   Background

11. The U.S. Department of State [hereinafter "the Department"] offered Ms. Beberman to serve as a Diplomatic Security Engineering Officer career candidate in the Bureau of Diplomatic Security on November 23, 2009.

12. Ms. Beberman was appointed to that position on January 19, 2010.

13. She was issued a Notice of Personnel Action (NOPA), indicating that this was a Foreign Service Specialist limited career appointment "for a period not to exceed four years, or the final decision of a tenuring board . . . whichever is sooner."

14. Her skill code as a Foreign Service Specialist, Security Engineering Officer, was 2550, 3 FAH-1 H-2623.2, in which position she would "supervise or perform work that involves applying professional knowledge of electrical and electronics engineering and phenomena for purposes of security systems development and maintenance for use at diplomatic and consular missions abroad." 3 FAH-1 Exhibit H-2623.3.

15. Ms. Beberman completed required training to serve as a Security Engineering Officer and was posted overseas as an entry-level Foreign Service Specialist.

16. She was evaluated both on her training which concluded in August 2010 and her first foreshortened overseas assignment, covering the brief period from September 29, 2010 to March 25, 2011.

17. The Department offered Ms. Beberman to serve as a Foreign Service Officer career candidate in the Economic career track on February 21, 2011.

18. She was appointed to that position on March 27, 2011.

19. She was issued a new NOPA transferring her from a Foreign Service Specialist career candidate to a Foreign Service Officer career candidate "for a period not to exceed 5 years, of the final decision of a tenuring board . . . whichever is sooner."

20. Her skill code as a Foreign Service Officer, Economic Officer, was 5015, 3 FAH-1 H-2623.2.

21. Ms. Beberman, when serving as an Economic Officer, would "supervise or perform work in recommending, analyzing, or reporting economic and commercial policies, developments or issues in a host country, region or economic system; or that develop or execute economic policy; promote U.S. economic interests and goals; and/or provide assistance to U.S. businessmen abroad."  3 FAH-1 Exhibit H-2623.3.

22. Ms. Beberman served as a Foreign Service Officer career candidate in the Economic career track until October 31, 2019, when she was forced to involuntarily retire.

23. Over the years that Ms. Beberman served as a Foreign Service Officer career candidate, she received multiple performance evaluations, awards, commendations, and acknowledgements.

24. Foreign Service Officer career candidates are considered for tenure by up to three Commissioning and Tenure Boards during their five-year limited appointments.

25. Ms. Beberman was designated for separation because she was not recommended for tenure by three Commissioning and Tenure Boards (CTBs) and her limited career appointment was set to expire.

26. Ms. Beberman filed a grievance alleging that the CTBs were not properly composed.

27. By Department regulation, the CTBs were required to include an employee of an agency other than the State Department.  3 FAH-1 H-2245.1(a).

28. The CTBs that had considered Ms. Beberman for tenure only included State Department employees and had five members instead of six.

29. Ms. Beberman proved that the three CTBs were improperly composed.

30. Because the CTBs were improperly composed, the Foreign Service Grievance Board (FSGB) found in her favor and ordered that she be considered for tenure by properly composed CTBs.

**COUNT I – ENJOIN CONSIDERATION OF PRIOR CANDIDACY**

31. The Secretary arbitrarily and capriciously denied Ms. Beberman's request not to have the final CTB that will be deciding whether to recommend her for tenure as a Foreign Service Officer, consider her performance in her prior, terminated position, as a Foreign Service Specialist career candidate.

32. The Department intends to include two evaluations Ms Beberman received when she served as a Foreign Service Specialist career candidate.

33. These evaluations are for a different career candidacy appointment and are not properly before a Foreign Service Officer CTB.

34. Ms. Beberman is currently seeking tenure only as a Foreign Service Officer, not as a Foreign Service Specialist.

35. The evaluative materials related to her Foreign Service Specialist candidacy are irrelevant and should not be presented to the final CTB.

36. Foreign Service Officer candidates and Foreign Service Specialist candidates are separate and distinct appointments, with separate Commissioning and Tenure Boards, different tenuring criteria and precepts, and for a different term.

37. Entry-Level Foreign Service Officer candidates are appointed under the authority of 3 FAM 2210, whereas Foreign Service Specialists candidates are appointed under the authority of 3 FAM 2218.

38. A Foreign Service Officer candidate is appointed to a five-year limited career appointment, whereas a Foreign Service Specialist candidate is appointed to a four-year limited career appointment. *Compare* 3 FAM 2241.3 *with* 3 FAM 2251.3.

39.  The decision to offer a Foreign Service Officer candidate a career appointment is based on the recommendation of a Foreign Service Officer Commissioning and Tenure Board per 3 FAM 2245, whereas the decision to offer a Foreign Service Specialist candidate a career appointment is based on the recommendation of a Specialist Commissioning and Tenure Board, 3 FAM 2254.

40. A Foreign Service Officer Commissioning and Tenure Board and a Specialist Commissioning and Tenure Board consider different precepts when making their tenure decisions.

41. A Foreign Service Officer must demonstrate potential to serve effectively as a Foreign Service Officer, whereas a Foreign Service Specialist must demonstrate potential to perform satisfactorily in the occupational category in which the candidate is serving, which in Ms. Beberman's case, was as a Security Engineering Officer. *Compare* 3 FAM 2245.1 *with* 3 FAM 2254.1(a).

42. The Department intends to follow its "Standard Operating Procedures for Reconstituted Foreign Service Commissioning and Tenure Boards," in considering Ms. Beberman for tenure.

43. It would be contrary to such Standard Operating Procedures (SOP) for the Department to have the properly composed CTBs consider Ms. Beberman's service in furtherance of her earlier, terminated, Foreign Service Specialist career candidacy.

44. The SOP distinguishes the tenure considerations for Foreign Service Officers from that of Foreign Service Specialists. Foreign Service Officer career candidates and Foreign Service Specialist career candidates are not assessed for tenure based on the same criterion.

45. The sole criterion for a Foreign Service Officer is general, whereas the sole criterion for a Foreign Service Specialist depends on performing satisfactorily in a particular occupational category.

46. As stated in the SOP:

    For Foreign Service Officer candidates, the sole criterion for a positive tenuring decision will be the candidate's demonstrated potential, assuming normal growth and career development, to serve effectively as a Foreign Service Officer over a normal career span, extending to and including class FS-01. For Foreign Service Specialist candidates, the sole criterion for a positive tenuring decision will be the specialist candidate's demonstrated ability to perform satisfactorily in the occupational category in which the candidate is serving and the potential, assuming normal growth and career development, to serve effectively in the Foreign Service at higher level with great responsibilities in the specialist's occupational category.

47. The CTBs that will consider Ms. Beberman for tenure would not be able to readily differentiate their review of Ms. Beberman's evaluative materials, applying one criterion to her performance as a Foreign Service Officer career candidate and a different criterion to her performance as a Foreign Service Specialist career candidate.

48. Ms. Beberman's performance in the occupational category of a Foreign Service Specialist, Security Engineering Officer is clearly irrelevant to the sole criterion for a positive tenuring decision as a Foreign Service Officer.

49. By Department regulation, the Foreign Service Officer tenuring board has a different composition than that of the Foreign Service Specialist. "To the maximum extent possible," each Specialist tenure board "will include representatives of the specialist categories in which candidates are to be considered or members knowledgeable about the responsibilities of the specialist categories." 3 FAH-1 H-2255.1.

50. Ms. Beberman's service as a Security Engineering Officer, to the maximum extent possible, should be considered by a Security Engineering Officer, or at least a specialist from another occupational category within the Bureau of Diplomatic Security.

51. The Foreign Service Officer tenure board includes members of "the five skill codes/occupational categories (management, consular, economic, political, and public diplomacy)." 3 FAH-1 H-2246.1.

52. There will be no Foreign Service Specialists on the CTBs that consider Ms. Beberman for tenure, much less a Security Engineering Officer or another Foreign Service Specialist within the Bureau of Diplomatic Security.

53. It is improper for a CTB consisting only of Foreign Service Officers to consider evaluative materials that were prepared to be presented to a CTB including Foreign Service Specialists in deciding whether to grant Ms. Beberman tenure as a Foreign Service Officer.

54. Nothing in the Foreign Service Officer Career Candidate Program, 3 FAH-1 H-2240, should take Foreign Service Officer career candidates by surprise.

55. The Department never placed Ms. Beberman on notice that her evaluations from her previous, terminated Foreign Service Specialist career candidacy were considered by the original improperly composed CTBs or would be considered by the properly composed CTBs the FSGB has ordered the Department to convene.

56. When the original CTBs met, the Department did not specify the evaluative materials that it would be providing to the CTBs considering Ms. Beberman for tenure.

57. Her reasonable assumption was that, in deciding whether to recommend her for tenure as a Foreign Service Officer, the CTBs would only be presented with her evaluations, awards, commendations, and acknowledgements for the period when she served as a Foreign Service Officer career candidate, and not from some previous, terminated candidacy.

58. There was nothing in the counseling statements that the first two original CTBs wrote that would have led Ms. Beberman to expect that the evaluative materials that were before them would have included those evaluative materials she had received when she had previously served as a Foreign Service Specialist candidate and the last CTB did not give any reasons for its decision.

59. The first two original CTBs made absolutely no mention of Ms. Beberman's service as a Security Engineering Officer, which also tends to show that the evaluations Ms. Beberman received as a Foreign Service Specialist candidate were not provided to the original CTBs.

60. Including Ms. Beberman's evaluations from when she served as a Security Engineering Officer will make her file stick out like a sore thumb.

61. Ms. Beberman's file should not include evaluations from a prior candidacy so that she will only be considered for tenure based on her performance as a Foreign Service Officer candidate, like the other Foreign Service Officer candidates whose files will be included as comparators, per the Department's SOP.

## COUNT II – ENJOIN CTB FROM MEETING WITHOUT IDENTIFYING CTB MEMBERS' DEMOGRAPHICS AND SKILL CODE

62. The Secretary arbitrarily and capriciously denied Ms. Beberman's request that the Department provide her the race, gender, skill code, and class of each CTB member.

63. Each CTB must include at least one member of a minority group, one woman, and one member from each of the five skill codes, per 3 FAH-1 H-2246.1.

64. Ms. Beberman has no way of knowing that the Department has complied with 3 FAH-1 H-2246.1 if the Department does not disclose that information.

65. Ms. Beberman requests that in addition to the member's name, the Department identify the member's agency, cone/skill code (i.e. management, consular, economic), race, national origin, gender, and class.

66. To comply with its own regulation and afford Ms. Beberman due process, the Department must release this information for each of the CTBs who have already or will be considering Ms. Beberman for tenure as a Foreign Service Officer.

## COUNT III – ENJOIN THE CTB FROM MEETING WITHOUT INCLUDING FILES OF PROPER COMPARATORS.

67. The Secretary arbitrarily and capriciously denied Ms. Beberman's request to include the files of Foreign Service Officers who were denied tenure as comparators before the final CTB considering her for tenure.

68. The Department's SOP for reconstituted CTB states:

    The Reconstituted Board will review, in addition to the employee under consideration, the performance files of seven individuals from the employee's original tenure cohort. The seven individual comparison files will be randomly selected and will include four individuals who were recommended for tenure by the original board and three individuals who were deferred for an additional review by the original board. The findings of the Reconstituted Board will have no effect on the individuals used for comparison purposes.

69. On the first two reviews for tenure, a CTB may defer the Foreign Service Officer for further consideration for tenure or may deny the Foreign Service Officer tenure. However, on the third review, a Foreign Service Officer may only be recommended for tenure or denied tenure.

70. There is no opportunity for a further deferral for a fourth review. Therefore, to include as comparators Foreign Service Officers who were deferred for a fourth review is meaningless.

71. The only fair comparators for the third review would be Foreign Service Officers who were recommended for tenure and Foreign Service Officers who were denied tenure.

72. As comparators, the final CTB must have before it the files of Foreign Service Officers who were recommended for tenure and denied tenure.

**COUNT IV- ENJOIN DEPARTMENT FROM UNILATERALLY MODIFYING DATES**

73. The Secretary arbitrarily and capriciously denied Ms. Beberman's request to correct the erroneous dates on Ms. Beberman's Employee Evaluation Report (EER) for the period from July 26, 2012 to November 7, 2012.

74. In Ms. Beberman's EER for the period from July 26, 2012 to November 7, 2012, the Department erroneously changed the "DATE RECEIVED IN HR/PE" and "DATE RELEASED TO DEPARTMENT FILES" from November 19, 2012 and November 20, 2012, respectively, to June 6, 2014.

75. Correcting this error and including the original dates, would be in compliance with the SOP concerning reconstituted CTBs in that it would preserve her anonymity (rather than making it abundantly clear that she is the grievant) and afford her a fair and unprejudicial review.

76. Without obtaining Ms. Beberman's consent, the Department changed these dates when it agreed with Ms. Beberman to remove certain statements from this EER in June 2014.

77. The Department has taken the position that Ms. Beberman has waived any objection to the change in these dates in that the EER bore these dates ever since it was changed.

78. But the Department never informed Ms. Beberman that it was changing these dates and changing the dates was not within the scope of the agreement that Ms. Beberman and the Department entered into.

79. In reviewing whether the Department complied with the agreement Ms. Beberman focused on the content of the EER and not the dates, since the Department never notified her that, in breach of its prior agreement, it was changing the dates.

80. Therefore, for the Department to claim that she should have raised this concern earlier and that she has waived it is unfair.

81. The only reason that Ms. Beberman did not raise this concern earlier is that she did not observe that the Department had changed the dates, because the Department failed to place her on notice that it was changing any dates.

82. The final CTB will be able to detect that she is the grievant based on the dates that the Department unilaterally changed without informing her and in breach of their agreement to only redact certain, specific content.

## Prayer for Relief

Ms. Beberman respectfully requests that this Court:

a. Enjoin the Secretary from having the final CTB that will be decided whether to recommend Ms. Beberman for tenure as a Foreign Service Officer consider her performance in her prior terminated position as a Foreign Service Specialist career candidate.

b. Require the Secretary to identify the race, gender, skill code, class, and agency of each CTB member who considered or will be considering Ms. Beberman for tenure.

c. Require the Secretary to include for comparison by the final CTB that will be considering Ms. Beberman for tenure, one or more files of Foreign Service Officer career candidates who were denied tenure.

d. Require the Secretary to correct the erroneous dates on Ms. Beberman's EER for the period from July 26, 2012 to November 7, 2012.

e. Declare the final CTB's decision void, should the CTB have before it Ms. Beberman's evaluation materials from her performance as a Foreign Service Specialist, or should the Department fail to identify the race, gender, skill code, class, and agency of each CTB member who considered or will be considering Ms. Beberman for tenure, or if no files of any Foreign Service Officer career candidates who were denied tenure are included for comparision, or if the Secretary submits Ms. Beberman's EER for the period from July 26, 2012 to November 7, 2012 to the CTB without correcting the erroneous dates.

f. Award attorney's fees if warranted and costs; and

g. Grant all other relief deemed just, equitable, and proper.

Respectfully submitted,

DATED: August 30, 2023

*/s/ Julie A. Beberman*
Julie A. Beberman, *pro se*
P.O. Box 223029
Christiansted, V.I. 00822
 (340) 277-1613
OilGenie@yahoo.com