## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| JULIE BEBERMAN, | ) |
| | ) |
|            **Plaintiff,** | ) |
| | ) |
|     v. | )    Civil Action No. 2023-0036 |
| | ) |
| SECRETARY OF STATE ANTONY BLINKEN, | ) |
| | ) |
|            **Defendant.** | ) |

**Attorneys:**
**Peter James Lynch, Esq.,**
St. Thomas, U.S.V.I.
    *For Plaintiff*

### MEMORANDUM OPINION

THIS MATTER comes before the Court on Plaintiff Julie Beberman's ("Plaintiff") "Motion for a Temporary Restraining Order or Preliminary Injunction" ("Motion"). (Dkt. No. 2). For the reasons that follow, the Court will deny Plaintiff's Motion for both a temporary restraining order and a preliminary injunction.

### I.    BACKGROUND

On August 30, 2023, Plaintiff filed a Complaint against Secretary of State Antony Blinken in his official capacity, arising out of her employment as a Foreign Service Officer within the U.S. Department of State ("State Department"). (Dkt. No. 1). Plaintiff alleges that in January, 2010, she was appointed to serve as a Diplomatic Security Engineering Officer career candidate in the Bureau of Diplomatic Security. *Id.* at 2. A Notice of Personnel Action ("NOPA") was issued, indicating that this was a Foreign Service Specialist limited career appointment "for a period not to exceed four years, or the final decision of a tenuring board . . . whichever is sooner." *Id.* Plaintiff completed training to serve as a Security Engineering Officer in August 2010 and served in that

position until March 2011, when she was appointed as a Foreign Service Officer and was issued a new NOPA transferring her from a Foreign Service Specialist to a Foreign Service Officer career candidate "for a period not to exceed 5 years, or the final decision of a tenuring board . . . whichever is sooner." *Id*. at 2-3.

To continue her employment as a career appointee beyond her term, Plaintiff had to receive tenure from the Commissioning and Tenure Board ("CTB") within the State Department. *See* 22 U.S.C. § 3946(a) (requiring Foreign Service career candidates to "first serve under a limited appointment as a career candidate for a trial period of service prescribed by the Secretary"); 22 C.F.R. § 11.20(a)(3) (establishing a trial period of no longer than five years). Foreign Service Officer career candidates are considered for tenure by up to three CTBs during their five-year limited appointments. (Dkt. No. 1 at 3). On three occasions Plaintiff was considered for tenure. *Id*. The Summer 2014 and 2015 CTBs deferred on the tenure decision, and the Winter 2015 CTB denied her tenure. (Dkt. No. 3-7 at 2). Plaintiff was therefore designated for separation from the State Department upon expiration of her five-year term, which was set to occur in early 2016. *Id*.

Plaintiff filed a grievance with the Foreign Service Grievance Board, alleging that the CTBs were improperly composed. (Dkt. No. 1 at 3). Specifically, Plaintiff alleged that by State Department regulation, the CTBs were required to include an employee of an agency other than the State Department. *Id*. However, the CTBs that considered Plaintiff for tenure included only State Department employees and had five members instead of six. *Id*. In March 2019, the Foreign Service Grievance Board found in Plaintiff's favor and ordered that Plaintiff's tenure be considered by three properly composed reconstituted CTBs. (Dkt. No. 3-7 at 2). After a period of temporary interim relief from separation during this grievance process, Plaintiff alleges that she was forced to involuntarily retire from the State Department on October 31, 2019. (Dkt. Nos. 3 at 2, 3-7 at 2).

On August, 24, 2023, the State Department informed Plaintiff that it was preparing to convene the third and final reconstituted CTB in mid-September 2023 to reconsider Plaintiff for tenure. (Dkt. Nos. 3 at 3, 3-8). Plaintiff made several requests to the grievance staff regarding the composition of the final reconstituted CTB and the materials it would review—four of which are at issue in the instant Motion and discussed in greater detail in Section III.B, *infra*. (Dkt. Nos. 3 at 3-4, 3-9). Plaintiff states that "[t]he Secretary denied these four requests." (Dkt. Nos. 3 at 4, 3-10 at 1).

On August 30, 2023, Plaintiff filed the instant Motion seeking an Order from the Court enjoining the State Department from convening a final reconstituted CTB to consider her for tenure until certain issues are resolved. (Dkt. No. 3 at 13). Plaintiff asserts that the following four issues, which correspond with Counts I-IV of the Complaint, must be resolved before her tenure is considered by the final reconstituted CTB: (1) the CTBs should be limited to reviewing evaluative materials concerning only her performance as a Foreign Service Officer and not materials from her prior role as a Foreign Service Specialist; (2) grievance staff should provide Plaintiff with the race, class, gender, and skill codes of each member of the CTB; (3) among the comparators provided to the CTB on its final review, the files of Foreign Service Officers who were deferred for tenure should not be included; and (4) the State Department must restore certain dates in one of Plaintiff's Employee Evaluation Reports ("EER") so that Plaintiff can avoid, as she claims, being identified as the grievant for whom the final reconstituted CTB is convened. (Dkt. Nos. 3 at 3-4; 3-9 at 1-4, 12-14).

## II. APPLICABLE LEGAL PRINCIPLES

Under Rule 65 of the Federal Rules of Civil Procedure, the Court may grant injunctive relief with a temporary restraining order or a preliminary injunction. *Am. Tel. & Tel. Co. v. Winback & Conserve Prog. Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). Injunctive relief is "an extraordinary remedy . . . which should be granted only in limited circumstances." *Id*. The same legal standard applies to requests for a temporary restraining order and a preliminary injunction. *Smith v. Litton Loan Servicing, LP*, No. 04-02846, 2005 U.S. Dist. LEXIS 1815, at *20 (E.D. Pa. Feb. 4, 2005).

To prevail on a motion for a temporary restraining order or preliminary injunctive relief, the moving party must show each of the following four elements: (1) a reasonable probability of success on the merits; (2) that she will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that public interest favors such relief. *See N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)).

"The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005); *see also Wilson v. Spaulding*, 2015 U.S. Dist. LEXIS 167477, *6 (M.D. Pa. Dec. 15, 2015) ("Although the Court must balance all four factors to determine whether it should order injunctive relief, as a practical matter, a plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate.") (quoting *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)). The first two factors— success on the merits and irreparable harm—are of particular importance as they are considered

"threshold showings." *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 319 (3d Cir. 2020) (internal quotation marks and citation omitted). If a plaintiff is successful in satisfying the first two factors, the court will then consider, to the extent relevant, the second two factors. *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 100 Fed. Appx. 70, 74 (3d Cir. 2004). "Plaintiffs must clear a high bar to be entitled to a preliminary injunction. It is an extraordinary remedy." *Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376, 382 (M.D. Pa. 2021).

### III. DISCUSSION

#### A. Irreparable Harm

A preliminary injunction "must protect a plaintiff from the cause of irreparable harm and nothing more." *I.M. Wilson, Inc. v. Grichko*, No. 18-CV-05194, 2019 WL 5394113, at *4 (E.D. Pa. Oct. 22, 2019). Irreparable harm is "potential harm [that] cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. V. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Accordingly, to satisfy this gateway factor, a movant must show a "significant risk that he or she will experience harm that cannot be adequately compensated after the fact by monetary damages." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000). "This is not an easy burden." *Id*. at 485. Further, the threatened harm "must not be speculative," *id*. at 487-88 & n.13, and the movant must demonstrate a "presently existing actual threat," *Holiday Inns of America, Inc. v. B & B Corporation*, 409 F.2d 614, 618 (3d Cir. 1969). "Thus, even though the preliminary injunction inquiry is forward looking, the court can and must determine whether the moving party has established that it specifically and personally risks irreparable harm to succeed on this factor." *ADP, Inc. v. Levin*, No. 21-2187, 2022 U.S. App. LEXIS 10990, at *6 (3d Cir. Apr. 21, 2022).

Plaintiff states that if the final reconstituted CTB were to deny her tenure and she is able to show that its procedures were improper, a final decision on her candidacy will be further delayed while another CTB is reconstituted. (Dkt. No. 3 at 5). According to Plaintiff, this harm is "enhanced" because she is now 61 years old, "the mandatory retirement age for Foreign Service Officers is 65," and "many" State Department positions have a three-year minimum length of service. *Id*. Plaintiff claims that unless she is reinstated soon she will suffer irreparable harm because "there is a chance that she would not serve as a diplomat overseas." *Id*.

Plaintiff fails to establish that she will suffer irreparable harm absent injunctive relief. First, Plaintiff's claimed harm is speculative. She states that "many"—not all—"positions in the State Department are of a three-year minimum length," which results in "a chance"—not a significant risk—"that she would not serve as a diplomat overseas." *Adams*, 204 F.3d at 484-85; (Dkt. No. 3 at 5). By Plaintiff's own characterization, it thus appears questionable as to whether Plaintiff's claimed harm is actually likely to occur. This "chance" that she might not be able to serve overseas as a Foreign Service Officer is thus speculative and does not amount to a "presently existing actual threat." *Holiday Inns of America, Inc.*, 409 F.2d at 618.

Second, even assuming that Plaintiff will be unable to serve as a diplomat overseas—which as noted above is highly speculative—"well-established Supreme Court and Third Circuit precedent dictates that the loss of a job alone does not constitute irreparable harm." *Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376, 382 (M.D. Pa. 2021) (citing *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974); *see also Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987); *Moteles v. Univ. of Pa.*, 730 F.2d 913, 919 (3d Cir. 1984) ("discharge from employment with all of its attendant difficulties is not irreparable injury"). This conclusion is not altered where a claimant is facing loss of employment—or a particular job opportunity, as Plaintiff claims here—due to reaching an age

6

of mandatory retirement. *See EEOC v. New Jersey*, 620 F. Supp. 977, 996 (D.N.J. 1985) (police officers approaching mandatory retirement age were not subject to irreparable harm during the pendency of the case to warrant injunctive relief because they could seek different employment utilizing their experience); *Farris v. Rice*, 453 F. Supp. 2d 76 (D.D.C. 2006) (foreign service officer's mandatory retirement did not pose irreparable harm to warrant injunctive relief because her academic record and experience in the Foreign Service put her in a strong position to find significant alternative work.). Indeed, if the final reconstituted CTB issues an unfavorable ruling and Plaintiff can demonstrate that its process for reaching the decision was improper, Plaintiff can seek money damages or appropriate equitable relief from the Court. The harm is therefore not irreparable. *See Dietz v. Baker*, 523 F.Supp.2d 407, 425 (D. Del. 2007) (plaintiff's request for preliminary injunction to retain employment was denied because her losses could "be remedied by appropriate judicial decrees if the plaintiff should prove successful at trial, and such judicial relief may properly include provisions for employment, back-pay, fringe benefits and the like."); *see also Instant Air Freight Co.*, 882 F.2d at 801 (irreparable harm is "potential harm [that] cannot be redressed by a legal or an equitable remedy following a trial.").

Accordingly, Plaintiff has not demonstrated that she would suffer irreparable harm in the absence of injunctive relief. On this ground alone, Plaintiff's Motion for a Temporary Restraining Order or Preliminary Injunction must fail. *ACE Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 Fed. Appx. 727, 732 (3d Cir. 2009) ("A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction.") (citing *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)); *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) ("In the absence of irreparable injury, no preliminary injunction would lie, even if the other three elements … were found.").

**B. Likelihood of Success on the Merits**

The second threshold factor—likelihood of success on the merits—also presents an insurmountable barrier to Plaintiff's request for injunctive relief and an independent basis for the denial of such relief.

**1. Role as Foreign Service Specialist (Count I)**

Plaintiff first asserts that the CTBs should be limited to reviewing evaluative materials concerning only her performance as a Foreign Service Officer and not for her prior role as a Foreign Service Specialist because consideration of her performance in the latter position would be irrelevant. (Dkt. No. 3 at 6). Plaintiff states that Foreign Service Officer candidates and Foreign Service Specialist candidates hold different positions, have different responsibilities, and are reviewed by tenure boards composed of different individuals. *Id*. at 6-10. Plaintiff also notes that the "Standard Operating Procedures for Reconstituted Foreign Service Commissioning and Tenure Boards" ("SOP") (Dkt. No. 3-11) state different criteria for considering tenure for Foreign Service Officers and Foreign Service Specialists. (Dkt. No. 3 at 7). Plaintiff argues that it would therefore run contrary to the guidance of the SOP for the reconstituted CTB to consider her former service as a Foreign Service Specialist in its consideration of whether to grant her tenure as a Foreign Service Officer. *Id*.

Plaintiff fails to cite any authorities for the proposition that the evaluative materials that may be considered must be limited to her performance as a Foreign Service Officer. The SOP on which Plaintiff relies provides instruction for how a CTB should evaluate a Foreign Service Officer candidate, and states in pertinent part:

> For Foreign Service Officer candidates, the sole criterion for a positive tenuring decision will be the candidate's demonstrated potential, assuming normal growth and career development, to serve effectively as a Foreign Service Officer over a normal career span, extending to and including class FS-01.

8

(Dkt. No. 3-11 at 2). Nothing about this language suggests that in considering one's "demonstrated potential . . . to serve effectively as a Foreign Service Officer," only performance as a Foreign Service Officer is relevant.[1] Moreover, the Foreign Affairs Handbook, to which Plaintiff cites in her Motion, contains a section titled "Foreign Service Officer Career Candidate Program" which includes instructions consistent with those in the SOP for constructing a CTB and conducting a review of a Foreign Service Officer's candidacy for tenure. A subsection titled "Types of Evaluation Material" provides in pertinent part:

> Other evaluation material, including commendations and awards [ ] may be included in a career candidate's performance file. The same rules of admissibility will apply to all evaluation material of career candidates as apply to evaluation material prepared on other members of the Foreign Service.

3 FAH-1 H-2243. As with the SOP, this excerpt from the Foreign Affairs Handbook does not support a finding that a CTB is limited to review of only Plaintiff's experience as a Foreign Service Officer. What it *does* mandate is that the same rules for admissibility of evaluation material applies across the board. Plaintiff is entitled to nothing more and nothing less.[2]

Because Plaintiff has failed to cite any legal authorities or State Department rules or regulations that support her contention that the evaluation materials considered by the CTB must be limited to her employment as a Foreign Service Officer, she cannot demonstrate that she is likely to succeed on the merits of this claim. *See Miller v. Mannion*, No. 3:22-cv-120, 2022 U.S. Dist. LEXIS 232163, at *16 (W.D. Pa. Aug. 4, 2022) (denying motion for TRO or preliminary

---

[1] Indeed, it is difficult to credit Plaintiff's contention that consideration of her performance as a Foreign Service Specialist is "clearly irrelevant" and "makes no sense" (Dkt. No. 3 at 8) in light of the fact that an individual's performance in prior non-identical positions is very commonly considered in job application and promotion processes.

[2] To the extent that Plaintiff is claiming that she is entitled to something more than this rule provides, she has cited no support for such a proposition. To the extent that this rule embraces the relief that Plaintiff seeks, her request is moot.

9

injunction because claimant "cites no law whatsoever in support of this position, [and therefore] the Court finds that he has failed to show a likelihood of success on the merits. . . ."); *see also Miller v. Penn Manor Sch. Dist.*, 588 F. Supp. 2d 606, 626-27 (E.D. Pa. 2008) (denying injunctive relief and stating that "[P]laintiffs have cited no legal authority to support their conclusion. . . . In the face of the utter lack of authority . . . I conclude that plaintiff fails on his [] challenge on this point and has no likelihood of success on the merits of this claim."); *Cent. Jersey Freightliner, Inc. v. Freightliner Corp.*, 987 F. Supp. 289, 295 (D.N.J. 1997) (holding that plaintiffs cannot establish a likelihood of success on the merits for injunctive relief when they "have cited no authority to support their contention").

### 2. Composition of CTB (Count II)

Plaintiff correctly notes that in accordance with the SOP, each CTB must be composed of at least one member of a minority group, one woman, and one member from each of the five skill codes. (Dkt. No. 3 at 10). Plaintiff asserts that because she has no way of assessing whether a CTB is properly composed, she must be furnished with each CTB member's agency, skill code, race, national origin, gender, and class. *Id*.

The SOP states that "[a]n individual who is being granted a Reconstituted Board will be provided the names of the members of the Reconstituted Board and an opportunity to request recusal" but does not state that Plaintiff is entitled to be provided with each CTB member's agency, skill code, race, national original, gender, or class. (Dkt. No. 3-11 at 1). Plaintiff has been provided with a list of the members of her final reconstituted CTB, which is composed of six individuals, including one employee of an agency other than the State Department. (Dkt. No. 3-8). Plaintiff has therefore received the information mandated in the SOP and has not provided any authority

demonstrating that she is entitled to any additional information regarding the composition of the CTB. Thus, Plaintiff has not shown that she is likely to succeed on the merits of this claim.

### 3. Comparison Files (Count III)

The SOP states:

> "Each reconstituted case file will be accompanied by a set of seven comparison files to maintain the anonymity of the employee under consideration and ensure a fair and unprejudiced review. . . . The Reconstituted Board will review, in addition to the employee under consideration, the performance files of seven individuals from the employee's original tenure cohort. The seven individual comparison files will be randomly selected and will include four individuals who were recommended for tenure by the original board and three individuals who were deferred for an additional review by the original board."

(Dkt. No. 3-11 at 2).

Plaintiff argues that "[t]he files of Foreign Service Officers who were denied tenure must be included as comparators, for this third and final review." (Dkt. No. 3 at 10). Plaintiff asserts that because this is her final review, she can only be recommended for, or denied, tenure—deferral is no longer a possible outcome. *Id*. at 11. She claims that comparing her to Foreign Service Officers who were deferred would be meaningless and the only fair comparators at this stage of the review process would be Officers who were recommended for, or denied, tenure. *Id*.

Notably, Plaintiff's personal views are again devoid of any authority to support a finding that she is likely to succeed on this claim. Plaintiff bases her claim on the fact that this is a final CTB review, but the SOP makes no such distinction for final CTBs. Accordingly, Plaintiff has not shown that she is likely to succeed on the merits of this claim.

11

### 4. Date of Employee Evaluation Report (Count IV)

Plaintiff states that in her EER for the period from July 26, 2023 to November 7, 2012, the State Department "erroneously" changed the "Date Received in HR/PE" and "Date Released to Department Files" from November 19, 2012 and November 20, 2012, respectively, to June 6, 2014. (Dkt. Nos. 3 at 11; 3-12; 3-13). Plaintiff explains that the State Department made this change to the dates listed in the EER when it removed certain statements from the EER in June 2014. (Dkt. No. 3 at 12). Plaintiff states that this change "was not within the scope of the agreement that Ms. Beberman and the Department entered into."[3] *Id*. at 12. Plaintiff claims that "[t]he gap between the date when the EER was drafted and when it was submitted to HR and the Department files readily identifies Ms. Beberman as the grievant for whom the reconstituted CTBs were convened" and that correcting this error would help her maintain her anonymity consistent with SOP protocol. *Id*. at 11-12.

Other than her bald statement, Plaintiff does not explain how the gap in dates listed in one of her EERs would readily identify her as the grievant before the CTB. While there is a gap between the 2012 and 2014 dates, it is unclear how that would necessarily clue a member of the CTB in on the fact that Plaintiff's file is the one under review. Indeed, one would have to assume that a correction or change to a personal record that might result in disparate dates is such an unusual event that it would necessarily raise a red flag. Moreover, Plaintiff's claim also relies on the assumption that no other EER in any of the other seven files have any adjustments which reflect that changes to the EER were made. Finally, it is established under the SOP that four of the files included in the tenure review process are from individuals whose previous bid for tenure was

---

[3] Plaintiff does not attach or cite to any "agreement" with the State Department in support of her claim that the changing of the dates was improper.

12

deferred. Plaintiff's argument requires a giant leap to the conclusion that the gap between the 2012 and 2014 dates would identify her not only as among the individuals whose tenure was deferred, but as the individual for whom the final CTB was reconstituted. In view of this body of assumptions upon which Plaintiff's argument is based, she has failed to demonstrate that she is likely to succeed on the merits of this claim.

\* \* \*

In sum, Plaintiff bases her requests for relief on what she merely perceives as unfair or incorrect, but provides no support for a finding that the State Department's procedures, which are in accord with the SOP, are unlawful or otherwise improper. Consequently, Plaintiff has failed to demonstrate that she is reasonably likely to succeed on the merits with respect to any of her requests. For this independent reason, her Motion for Temporary Restraining Order or Preliminary Injunction must fail.

### C. Additional Factors

Given that Plaintiff has not shown irreparable harm or likelihood of success on the merits, the Court need not reach the final two factors for determining the propriety of injunctive relief. *Phila. Vietnam Veterans Mem'l Soc'y v. Philadelphia*, No. 21-1125, 2022 U.S. App. LEXIS 7629 (3d Cir. Mar. 23, 2022) (affirming order granting preliminary injunction after determining that plaintiff failed to satisfy the requirement of demonstrating irreparable harm); *Catalyst Outdoor Advert., LLC v. Douglas*, No. 18-1470, 2018 U.S. Dist. LEXIS 87146, at \*11 (E.D. Pa. May 24, 2018) ("Because [plaintiff] has not met its burden on the two threshold factors—likelihood of success and irreparable harm—we need not balance the remaining two [factors for injunctive relief].").

## IV. CONCLUSION

In view of the foregoing, the Court will deny Plaintiff's Motion for a Temporary Restraining Order or Preliminary Injunction. An appropriate Order accompanies this Memorandum Opinion.

Date: September 8, 2023            _____/s/_____
                                                         WILMA A. LEWIS
                                                         District Judge